**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEYMARKET OF OHIO, LLC,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:08-CV-325 |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **TERRY KELLER, et al.,** | : | Magistrate Judge Mark R. Abel |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant Jefferson County, Ohio's ("Jefferson County" or the "County") for Summary Judgment. (Doc. 88.) For the reasons set forth herein, Defendant's motion is **GRANTED**.

**I. BACKGROUND**

*A. Factual Background*

This action arises out of a sale of real estate in Jefferson County, Ohio. Plaintiff Keymarket of Ohio, LLC ("Keymarket") operates television and radio stations in Jefferson County, Ohio. Jefferson County is a political subdivision of the State of Ohio. Defendant Terry Keller ("Keller") was, at the times relevant to this action, an employee of the Jefferson County Recorder.[1]

On March 21, 2000, Keymarket purchased real estate parcel number 53-0006-000 (the "Parcel") located in Jefferson County, Ohio. Keymarket recorded the deed on June 2, 2000, listing a tax mailing address of P.O. Box 270, Brownsville, PA 15416. The month before

---

[1] On September 9, 2013, Keller's attorney submitted a notice indicating that Ms. Keller passed away on August 27, 2013. (Doc. 87.) Keller's attorney subsequently filed Ms. Keller's Certificate of Death with the Court, and represented to the Court that, as of October 11, 2013, no estate had been opened by Ms. Keller's heirs. (Doc. 96.)

Keymarket recorded the deed, however, it canceled the Brownsville post office box and placed a forwarding order to the address 123 Blaine Road, Brownsville, PA. Keymarket did not notify Jefferson County of this address change.

Keymarket made a single tax payment in 2001. The property taxes for 2001 were not paid in full, and the property was certified as delinquent in 2002. On September 22, 2005, the Jefferson County Treasurer filed a complaint seeking to foreclose on a number of properties, including the Parcel, for delinquent taxes. On the same date, notice was sent by ordinary and certified mail to Keymarket at P.O. Box 270, Brownsville, PA 15413. Both the certified and ordinary mail were returned to the clerk of the courts, marked by the United States Post Office as "Not Deliverable as Addressed - Unable to Forward – Return to Sender."

After service by mail failed, notice by publication occurred on three separate dates: October 7, 2005; October 14, 2005; and October 21, 2005, in compliance with Ohio Rev. Code § 5721.18(B).  After receiving no response from Keymarket, the Jefferson County Treasurer filed a motion for default judgment. On January 25, 2006, the Jefferson County Court of Common Pleas granted the motion and issued a Judgment and Order of Sale. Notice of the sale was then published on three separate dates: February 3, 2006; February 10, 2006; and February 17, 2006, in compliance with Ohio Rev. Code § 5721.19.

Again, Keymarket never responded to the published notices.  On February 24, 2006, the Jefferson County Sheriff conducted a Sheriff's Sale of the Parcel. At that sale, Keller purchased the property. On April 28, 2006, the Jefferson County Court of Common Pleas issued an Order Authorizing Sale, Authorizing Issuance of Deeds, and Distributing Proceeds of Sale. On June 14, 2006, after Keller paid the bid price to the Jefferson County Treasurer, the appropriate deed to the Parcel was prepared and filed.

*B. Procedural History*

**a. State Court Proceedings**

On July 19, 2006, in the original foreclosure suit, Keymarket filed a Motion for Relief from Judgment and Order of Sale in the Jefferson County Common Pleas Court.  Keymarket claimed that the sale of the Parcel violated its due process rights because of inadequate notice. On August 29, 2006, the Jefferson County Common Pleas Court denied Keymarket's motion, holding that Jefferson County had complied with the procedures specified by Ohio law. Keymarket appealed the Common Pleas Court's order, but the Ohio Seventh District Court of Appeals affirmed the Common Pleas Court's ruling that Jefferson County complied with the notice requirements prescribed by Ohio law. Keymarket then appealed to the Ohio Supreme Court but later moved to withdraw the appeal voluntarily, which the Ohio Supreme Court granted. On April 30, 2008, Keymarket refiled its appeal with the Ohio Supreme Court. On August 6, 2008, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal.

On March 27, 2008, shortly after Keymarket appealed to the Ohio Supreme Court, it filed a motion for reconsideration in the Ohio Seventh District Court of Appeals. In this motion, Keymarket asserted that the notices sent to the post office box were deficient because they were addressed to zip code 15413 instead of the 15416 listed on Keymarket's mailing address. The Court of Appeals rejected this argument for three reasons: 1) it was waived by not being raised previously; 2) Keymarket had rendered service unattainable by not giving the correct zip code itself; and 3) Jefferson County had still given proper notice by publication. Keymarket filed a motion for reconsideration with the Ohio Supreme Court, and the Ohio Supreme Court denied the motion.

**b. Federal Proceedings**

On April 9, 2008, Keymarket filed a complaint in the United States District Court for the Southern District of Ohio bringing claims against Keller and Jefferson County for violations of Plaintiff's right to substantive due process of law pursuant to 42 U.S.C. § 1983. (Doc. 2.) Specifically, Keymarket alleged that Keller and Jefferson County violated its substantive due process rights by conspiring together to have the County foreclose on the Parcel with improper notice to Keymarket so Keller could purchase it. (*Id*. at 3-4.)

After answering Keymarket's complaint, Keller and Jefferson County moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that substantive due process does not apply to real property rights and that Keymarket's claims were barred by the doctrine of res judicata. On August 18, 2009, subsequent to the filing of the Rule 12(c) motions, the magistrate judge permitted Keymarket to serve a limited set of interrogatories on Keller and Jefferson County. On September 14, 2009, before any interrogatory responses were received, this Court granted the Rule 12(c) motions on the ground that Keymarket's claim was barred by res judicata. The Court did not discuss the argument that substantive due process does not apply to real property rights.

On September 30, 2009, Keymarket filed an amended motion for reconsideration asking the district court to stay its order granting the motions for judgment on the pleadings and to require Keller and Jefferson County to respond to the interrogatories. In the amended motion for reconsideration, Keymarket raised the possibility that Keller may have been on paid duty status with Jefferson County when she purchased the Parcel. The Court ordered Keller and Jefferson County to respond to the interrogatories. Subsequently, on March 1, 2010, this Court denied Plaintiffs' amended motion, finding that the newly discovered evidence as to whether Keller

purchased the Parcel while on paid duty as an employee of Jefferson County was previously available through the exercise of due diligence.

Keymarket appealed this Court's orders granting the motions for judgment on the pleading and denying the amended motion for reconsideration. On June 8, 2012, the Court of Appeals reversed and remanded for further proceedings in this Court. In reviewing the matter, the Sixth Circuit explained that, "[w]hile Keymarket's § 1983 claims appear to raise the same arguments that were raised before the state court, specifically whether it received adequate service, res judicata concerns the repetition of claims, not arguments." *Keymarket of Ohio, LLC v. Keller*, 483 Fed.Appx. 967, 972 (6th Cir. 2012). The Sixth Circuit therefore held that, because it was unclear "how Keymarket could have raised this particular § 1983 claim, however frivolous or repetitious, at the motion to vacate juncture of the foreclosure proceeding," the doctrine of res judicata did not bar Keymarket's claims. *Id*.

On November 3, 2011, prior to the Sixth Circuit's remand, Plaintiff's original attorney was indefinitely suspended from the active practice of law for reasons unrelated to this case. *See Disciplinary Counsel v. Squire*, Slip Op. No. 2011-Ohio-5578. On March 7, 2013, the magistrate held a status conference in which counsel for Defendants and Plaintiff's new attorney, James Liekar, participated. Mr. Liekar had not, at that time, officially entered an appearance on behalf of Keymarket. Following that status conference, the magistrate issued an order directing the parties to submit a joint proposed scheduling order on or before March 29, 2013. (Doc. 73.)

On March 15, 2013, counsel for Jefferson County submitted a proposed scheduling order to Plaintiff's current counsel, seeking approval to submit the schedule jointly to the court. (*Letter from Matthew Teetor to James Liekar*, Doc. 88-1.) Plaintiff's counsel did not object to the proposed scheduling order. The proposed scheduling order was submitted by all Defendants and

5

this Court adopted that scheduling order on April 15, 2013. (Doc. 74.) In that order, Plaintiff was required to submit witness identifications by April 1, 2013.

On May 15, 2013, this Court ordered Plaintiff to show cause why this case should not be dismissed for want of prosecution. (Doc. 77.)  Specifically, the Court explained:

> Keymarket of Ohio, LLC is not represented by counsel who has entered an appearance as trial attorney. A limited liability company cannot represent itself. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-203 (1993). Although Jim Leiker participated in a March 7 telephone conference and represented that he would be promptly entering an appearance for plaintiff, he has not done so.

(*Id.* at 1.)  The Court ordered Plaintiff to show cause on or before May 29, 2013.  (*Id.*; *see* Doc. 78 (correcting show cause deadline to be May 29, 2013, rather than May 29, 2014).) Plaintiff never responded to the Show Cause Order. Nevertheless, on May 28, 2013, Mr. Liekar moved for leave to appear on behalf of Keymarket pro hac vice.  (Doc. 79.)   That motion was granted on May 29, 2013.  (Doc. 80.)

On August 26, 2013, this Court held a telephonic status conference, at which counsel for all parties participated. (Docs. 83 and 85.)  At that conference, the Court set a trial date of December 9, 2013, set a final pretrial conference for December 3, 2013, and set deadlines for the filing of dispositive motions, as well as responses to such motions.  All counsel agreed to the dates selected.  In addition, at the conference, counsel for Plaintiff was alerted that no witness identification had ever been produced pursuant to this Court's scheduling order. Counsel for Plaintiff indicated that one would be forthcoming shortly.  Jefferson County asserts that, to date, Plaintiffs have failed to identify any witnesses and that a written request to Plaintiff for witnesses has gone unanswered. (*See* Doc. 88-2.)

Following the August 26, 2013 telephonic status conference, this Court issued an order memorializing the agreed dates, and stating:

> The Court will not continue the trial date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

(Doc. 86 at 2.) The scheduling order further ordered that:

> Pursuant to Fed. R. Civ. P. 26(a)(3)(A)(i), on **November 11, 2013,** the parties shall submit to the Court, and serve on opposing counsel, the names, addresses and occupations of all witnesses they intend to call at trial, with a brief summary of each witness's testimony (two to three sentences), the purpose of that testimony, and the major issue about which the witness will testify. Failure to list a witness, except upon a showing of good cause, will preclude the use of that witness at trial.

(*Id*. at 4.)

On September 23, 2013, Jefferson County timely moved for summary judgment against Keymarket.[2]  (Doc. 88.) By the Court's scheduling order, Plaintiff's response to Jefferson County's Motion for Summary Judgment was due October 7, 2013.  On October 1, 2013, Plaintiff notified the Court that Plaintiff's counsel was that day leaving the country for two weeks, and requested an extension of time to file its response.  Plaintiff's counsel did not, however, file the motion and merely faxed the request to the Court.  Plaintiff's Motion for Extension of Time to File was properly filed on October 3, 2013.  (Doc. 90.)

On October 4, 2013, the Court denied Plaintiff's Motion for Extension, explaining:

> The filing deadlines in this case – including the October 7, 2013 deadline for Plaintiff's memorandum contra – were set with the agreement of all counsel and parties at a telephonic status conference held on August 26, 2013. . . .  At that that time, Plaintiff's counsel made no objection to the deadlines proposed by the

---

[2] Keller did not file a motion for summary judgment. On September 9, 2013, Keller's attorney submitted a notice indicating that Ms. Keller passed away on August 27, 2013. (Doc. 87.)  Keller's attorney subsequently filed Ms. Keller's Certificate of Death with the Court, and represented to the Court that, as of October 11, 2013, no estate had been opened by Ms. Keller's heirs.  (Doc. 96.)

7

> Court. In addition, the Court notes that Plaintiff waited until October 1, 2013 to notify the Court that it would be seeking an extension of time.
>
> If granted, the requested extension would disrupt substantially the expedited briefing and trial schedule agreed by the parties and set by the Court in this matter. The Court therefore finds that Plaintiff has not shown good cause for an extension of time to file its memorandum contra.

(Doc. 92.)

Plaintiff's counsel missed the October 7, 2013 filing deadline and did not file any response in opposition to Defendant's Motion. At a telephonic status conference held on October 16, 2013, Plaintiff's counsel indicated that he was unable to file timely a response in opposition to the County's Summary Judgment motion because he was out of the country at the time of the deadline.

On November 1, 2013, this Court held oral argument on Jefferson County's Motion for Summary Judgment and counsel for all parties participated. This matter is, therefore, ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of governing law to the rights of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

A movant for summary judgment meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). At that point, the non-movant must set forth specific facts

showing that there is a genuine issue for trial. *Id*. (quoting Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Notably, the party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253 (1968); Fed. R. Civ. P. 56(e)). It is not, however, the role of the trial court to "resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess the probative value of the evidence." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir. 1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)). All evidence and reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *Pucci*, 628 F.3d at 759 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. LAW AND ANALYSIS

Plaintiff's sole claim is that Defendants' conduct violated Keymarket's substantive due process rights because – although Keller allegedly knew how Keymarket could be effectively notified of the pending foreclosure proceedings on the parcel – Defendants conspired to enrich Keller at Plaintiff's expense by issuing defective foreclosure notices and enabling Keller to purchase the Parcel at the foreclosure auction for a fraction of its value. In its Motion for Summary Judgment, Jefferson County makes three arguments, namely that: 1) substantive due process does not apply to real property rights; 2) Plaintiff has failed to demonstrate that the County's actions "shock the conscience;" and 3) Plaintiff's suit should be dismissed for want of prosecution. (Doc. 88.)

9

*A. Substantive Due Process*

The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause has both a substantive and a procedural component. As the Sixth Circuit has explained, "[p]rocedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property; substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992) (alternations in *EJS Properties*); citing *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1216 (6th Cir. 1992)).  Here, Plaintiff does not assert a claim for violations of procedural due process; rather, Keymarket's sole claim is one for alleged violations of substantive due process. Specifically, Plaintiff contends that, in depriving Keymarket of its property interests in the Parcel, Defendants denied Keymarket the protections of substantive due process.

The interests "protected by substantive due process are of course much narrower than those protected by procedural due process," *Bell v. Ohio State Univ.,* 351 F.3d 240, 249-50 (6th Cir. 2003), and "[n]ot all arbitrary and capricious state action amounts to a violation of substantive due process." *Hussein v. City of Perrysburg*, 617 F.3d 828, 833 (6th Cir. 2010). Interests protected by substantive due process include: 1) those protected by specific constitutional guarantees, such as the Equal Protection Clause and the Fourth Amendment, *see Bell,* 351 F.3d at 250; *Braley*, 906 F.2d at 225;  2) "certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental," *Bell,* 351

10

F.3d at 250; and 3) freedom actions that "government officials may not take no matter what procedural protections accompany them," alternatively known as actions that "shock the conscience." *Bell,* 351 F.3d at 250; *Braley*, 906 F.2d at 224-25.

To the extent that Plaintiff argues that its interest in the property is protected by a "specific constitutional guarantee," *Bell*, 351 F.3d at 250, the right implicated would be the Fifth Amendment's Takings Clause, which prohibits the government from taking private property without just compensation. *Williamson v. County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). The Fifth Amendment contains an implied prohibition on takings for a private use and private use takings "are unconstitutional regardless of whether just compensation is paid." *Warren v. City of Athens*, 411 F.3d 697, 706-07 (6th Cir. 2005) (quoting *Montgomery v. Carter County,* 226 F.3d 758, 766-68 (6th Cir. 2000).

In *Warren v. City of Athens*, however, the Sixth Circuit held that a private use takings claim cannot be asserted as a substantive due process claim. *Id.* at 706. As the *Warren* Court explained, "Supreme Court authority … strongly stresses that substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff." *Id*. at 706-07 (citing *Graham v. Connor,* 490 U.S. 386, 394-95 (1989) (analyzing an excessive force claim under a Fourth Amendment standard and not "the more generalized notion of 'substantive due process'"); *Whitley v. Albers,* 475 U.S. 312, 326-27 (1986) (noting that in "the prison security context, the Due Process Clause affords...no greater protection than does" the Eighth Amendment)). Accordingly, because Keymarket could here seek relief under the Takings Clause, the Court cannot apply a substantive due process analysis premised on an alleged private use taking. *Id.*; *see also Montgomery,* 226 F.3d at 758 ("The takings clause itself addresses whether and under

11

what circumstances the government may take an individual's private property, which is why a number of circuits have concluded that no room is left for the concept of substantive due process.") (citing *Armendariz v. Penman,* 75 F.3d 1311, 1323-27 (9th Cir. 1996) (en banc), and *Coniston Corp. v. Vill. of Hoffman Estates,* 844 F.2d 461, 464 (7th Cir. 1988)); *cf. Choate's Air Conditioning & Heating v. Light, Gas & Water Div.,* 16 Fed. Appx. 323, 330-31 (6th Cir. 2001) (rejecting an effort to repackage a takings claim as a substantive due process violation).

At oral argument, Keymarket asserted that the County violated its due process right to adequate notice, relying solely on *Jones v. Flowers*, 547 U.S. 220 (2006). In *Jones*, the Supreme Court held that when a state's mailed notice of sale is returned marked "unclaimed," the state is required to "take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225. Publishing notice of the sale in a local newspaper did not suffice when the state might have re-sent the letter or posted notice on the door. *Id.* at 234-235.

Here, Jefferson County was required to "take additional steps" after receiving its letters, but several facts distinguish this case from *Jones*. First, *Jones* involved a home, which significantly alters the balance of weighing state and individual interests involved in notice. *See id.* at 229. Second, the certified mail in *Jones* was returned "unclaimed," which suggested that re-sending the letter by ordinary mail would reach the intended recipient. Here, Jefferson County sent *both* certified and ordinary mail, and both came back undeliverable, leaving little other option for reaching Keymarket by mail. Finally, whereas in *Jones* the state might have posted notice on the door of the home, here such a physical notice offered little hope of providing real notice.

When it is not "possible and practicable to give…more adequate warning," publication will suffice. *See id.* at 237. Though *Jones* shares some common threads with this case, it does not adequately support Plaintiff's argument. Jefferson County took the necessary steps to get notice to Keymarket in every reasonable way, through certified mail, and three separate published notices in the newspaper. Because no other "additional reasonable steps" were available to Keymarket, the County's efforts provided Keymarket adequate notice.

Nor does Plaintiffs' asserted interest in the Parcel fit comfortably within the class of unenumerated interests that "the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." Examples of fundamental rights recognized by the Supreme Court and the Sixth Circuit include the rights to reasonable care and safety while in government custody, *Youngberg v. Romeo,* 457 U.S. 307, 321–23 (1982); to travel locally through public spaces and roadways *Johnson v. Cincinnati,* 310 F.3d 484, 495–98 (6th Cir. 2002); to marry, *Loving v. Virginia,* 388 U.S. 1 (1967); to have children, *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 (1942); to direct the education and upbringing of one's children, *Meyer v. Nebraska,* 262 U.S. 390 (1923); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); to marital privacy, *Griswold v. Connecticut,* 381 U.S. 479 (1965); to use of contraception, *id.; Eisenstadt v. Baird,* 405 U.S. 438 (1972); to bodily integrity, *Rochin v. California,* 342 U.S. 165 (1952); and to abortion, *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). *But see DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189 (1989) (no substantive due process right to government protection from an abusive domestic situation). Accordingly, Plaintiff's claim cannot find refuge in the "fundamental interest" component of substantive due process.

The final avenue by which Plaintiffs may assert a substantive due process claim is through an assertion that Defendants took actions that "shock the conscience," and which "government officials may not take no matter what procedural protections accompany them." *Bell,* 351 F.3d at 250.  The Sixth Circuit has "questioned the continued vitality of this strand of substantive due process jurisprudence" and "continue[s] to recognize it in the exclusive context of cases involving physical abuse." *Choate's Air Conditioning & Heating Inc., v. Light, Gas, Water Div. of City of Memphis*, 16 F. App'x 323, 329-30 (6th Cir. 2001) (citing *Braley,* 906 F.2d at 225).  Where no physical abuse is alleged, such as in the zoning context, the Sixth Circuit has applied an alternative "arbitrary in the constitutional sense" standard, a variation of the "shocks the conscience" test that "emphasize[s] the degree of arbitrariness required to set aside a zoning decision by a local authority."  *Choate's Air Conditioning & Heating*, 16 F. App'x at 329-30 (citing *Pearson,* 961 F.2d at 1222).  The Sixth Circuit has elsewhere articulated the standard as one which recognizes that "a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren*, 411 F.3d at 706-07.

Although "challenges to arbitrary and capricious government action appear most frequently in cases involving zoning and other ordinances," the *Warren* Court confirmed that "they are not necessarily limited to such cases." *Id*. (citing *Vill. of Belle Terre v. Boraas,* 416 U.S. 1 (1974); *Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59 (1978); *Zinermon v. Burch,* 494 U.S. 113 (1990)).  The Court notes, however, that Plaintiffs have not identified any case – nor does the Court know of any – in which the Sixth Circuit has endorsed the applicability of this theory of substantive due process to particularized, rather than generally applicable, legislative or executive actions. *See Warren*, 411 F.3d at 708 ("Given the Warrens' position, we

will not consider the applicability of this theory [of arbitrary and capricious government action violating substantive due process] to the sort of particularized action involved in this case.").

Even assuming that the "arbitrary and capricious" theory of substantive due process does apply to the particularlized action against Keymarket, Plaintiff would have to demonstrate two elements to make out such a claim: 1) a constitutionally protected property or liberty interest exists; and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *EJS Properties*, 698 F.3d at 861 (citing *Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 573 (6th Cir. 2008)).  Here, Plaintiffs have failed to assert any facts that would create a genuine dispute as to whether the County engaged in arbitrary and capricious action.  The County foreclosed on Keymarket and, according to the Jefferson County Common Pleas Court and Ohio Seventh District Court of Appeals, did so in a manner consistent with Ohio law and process.  Plaintiff has offered no facts to support its allegations of a conspiracy with Keller or any intent by the County to misdirect notice so that Keller could buy the Parcel on the cheap.  To survive summary judgment, Keymarket "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (quoting *First Nat'l Bank of Ariz.,* 391 U.S. 253; Fed. R. Civ. P. 56(e)).  Because Keymarket has failed to create a genuine issue of fact for a jury as to whether there was constitutionally "arbitrary and capricious" action by Jefferson County, the County is entitled to summary judgment.  Jefferson County's Motion is, therefore, **GRANTED**.

### B. Dismissal for Want of Prosecution

Defendants also argue that the matter *sub judice* should be dismissed for want of prosecution**.** Rule 41(b) of the Federal Rules of Civil Procedure gives courts the authority to dismiss a case for "failure of the plaintiff to prosecute or to comply with these rules or any order

of the court." This measure is available to district courts as a tool "to effect 'management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties,'" and district courts are "given substantial discretion" in its application. *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (quoting *Matter of Sanction of Baker,* 744 F.2d 1438, 1441 (10th Cir. 1984)). Nevertheless, the Sixth Circuit "has been 'reluctant to uphold the dismissal of a case ... merely to discipline an errant attorney because such a sanction deprives the client of his day in court.'" *Id*. (citing *Buck v. U.S. Dep't of Agric., Farmers Home Admin.,* 960 F.2d 603, 608 (6th Cir. 1992)).

The Sixth Circuit has explained that, "[i]n the context of dismissal pursuant to Rule 41(b) for failure to prosecute, we look to four factors for guidance: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Id*. (citing *Stough v. Mayville Community Sch.,* 138 F.3d 612, 615 (6th Cir. 1998)). Significantly, "[a]lthough typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id.* (citing *Carter v. City of Memphis,* 636 F.2d 159, 161 (6th Cir. 1980)).

Jefferson County points to three courses of conduct which it asserts warrant dismissal for want of prosecution, namely: 1) Plaintiff's failure to respond to this Court's Show Cause Order; 2) Plaintiff's failure timely to identify witnesses; and 3) Plaintiff's failure to respond to the Motion for Summary Judgment. These assertions, however, misconstrue the record in this case.

16

First, although Plaintiff failed to submit a formal response the Show Cause Order, Keymarket cured the defect that was the basis for that Order (i.e., Keymarket's lack of representation by counsel), and did so before the Show Cause deadline. (*See* Docs. 77 and 78 (setting a show cause deadline of May 29, 2013); Doc. 79 (Plaintiff's May 28, 2013 Motion for Mr. Liekar to appear pro hac vice).)  Moreover, while the motives behind Mr. Liekar's delay in entering an appearance are unclear, the fact of the delay did not result in any prejudice to Jefferson County.

With respect to Plaintiff's purported failure timely to identify witnesses, the Court notes that the April 1, 2013 deadline to identify witnesses was not memorialized in a scheduling order until April 15, 2013. (*See* Doc. 74.)  The fact that Plaintiff still has not produced the required witness list is far more problematic.  Nevertheless, it is not clear from the record that Plaintiff's failure is willful or in bad faith. In addition, any prejudice to Defendant is, at this juncture, minimal.  Furthermore, Plaintiff has not been previously warned that failure to provide the witness list may result in dismissal, and no less drastic sanctions have been discussed.

Most troubling is Plaintiff's failure timely to file a memorandum contra to Defendant's motion for summary judgment.  On a conference call with the Court on October 16, 2013, Plaintiff's counsel represented that he had the incorrect filing deadline noted on his calendar and had not realized that fact until just before he left the country.  Plaintiff's counsel further represented that, because he was still out of the country at the time of the filing deadline, he was unable to file timely his response.  There is no indication that the failure to respond was motivated by *the Plaintiff's* willful disobedience or fault. Moreover, being precluded from filing a response to a dispositive motion is itself sanction for this conduct. Finally, there is no prejudice

17

to Jefferson County – in fact, Jefferson County is left in a stronger position for having no argument in opposition to its motion.

Based on the record described above, the Court cannot say the delays and missteps by Plaintiff's counsel rise to the level of "contumacious conduct" necessary to warrant dismissal for failure to prosecute. As such, the Court will not "deprive[] the client of his day in court" merely to "discipline an errant attorney." *Knoll*, 176 F.3d at 363.  Jefferson County's request to dismiss for want of prosecution is, therefore, **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Jefferson County's Motion for Summary Judgment is **GRANTED**.  This case is hereby DISMISSED.

**IT IS SO ORDERED.**

                                                                     **s/ Algenon L. Marbley**
                                                                     **Algenon L. Marbley**
                                                                  **United States District Judge**

**Dated: November 12, 2013**